The 4th District Appellate Court of the State of Illinois has reconvened. The Honorable Thomas M. Harris presiding. Morning, Council. We're on the record. Case number 4-23-0241, People v. Kevin Boyce. Council, could you state your appearances first for the appellant? Yes. Brooke Winterhalter for the appellant, Kevin Boyce. Okay, thank you. And for the appellee? Timothy J. Londrigan, State's Attorney's Appellate Prosecutor's Office. Thank you. Ms. Winterhalter, you may begin with your argument. May it please the Court, Council. Again, my name is Brooke Winterhalter, and I represent the appellant, Kevin Boyce. This morning, I plan to spend my time addressing the second and third arguments in the brief, but I am prepared to answer questions on all four arguments. Your Honors, as Mr. Boyce and his attorney were making their final preparations for trial on aggravated battery with a firearm, the State arrived in court on the morning of trial with a brand new charge, unlawful use or possession of a weapon by a felon. Alleging that Mr. Boyce unlawfully used or possessed the very same firearm he was alleged to have discharged in that aggravated battery at the same place and the same time. Under settled case law, this new count should have been dismissed for violation of the speedy trial and compulsory joinder statutes, and his attorney was ineffective when he failed to file a motion to dismiss on this basis as well. The State does not dispute that it had knowledge of the unlawful possession count when it charged Mr. Boyce with aggravated battery, nor does it dispute that the remedy, if compulsory joinder applies, is outright reversal of his conviction for unlawful possession of a weapon by a felon. The State only disputes whether these two charges are based on the same act as that term is used in the compulsory joinder statute. Good morning. With respect to that particular issue, I do have a question that is the issue related to specifically compulsory joinder. The State argues in its brief, I think it's at page 21, that the act of illegal possession of a weapon occurred as soon as defendant possessed the weapon at a time and place before he encountered the victim of his battery and is totally unrelated to her. Was there any evidence introduced at trial that showed defendant possessed this weapon before he encountered the victim on that morning of August 21st, 2022? No, Your Honor, the only evidence at trial was from the alleged aggravated battery on that video. All right, and was it, defendant we know was a convicted felon, would it have been possible, impossible for him to have fired a gun without illegally possessing it? I think the answer to that question is yes, I think it would have been impossible because under the unlawful possession of a weapon by a felon statute, I think the defense of necessity is unusable and he had planned to assert self-defense to the first charge in this case. Well, we know a convicted felon certainly could illegally possess a gun without firing it, right? Sorry, could you repeat that? Sure, so a convicted felon could illegally possess a gun without firing it? Correct, Your Honor. Okay, so does the fact that it would be possible to violate the possession statute without firing a gun way in favor of the state's position, that there were two charge, that the two charges here were based on different acts? I mean, that's the dispute here, was it one act or two acts? Correct, I, so under Illinois Supreme Court law, the one-act-one-crime doctrine and double jeopardy do not are different act assessments and the act for compulsory joinder is specific to the charges in the case and the allegations here are that a firearm was discharged, therefore he possessed it. There's no evidence that whatever is in this video is in fact a firearm other than shell casings that were found, which allegedly are the result of this discharge. And so in this case, it is impossible to from the firearm itself because someone can... Your position is this is one act, even though it violated two or may have violated two statutes, is that correct? That is correct, Your Honor. And just as someone could possess a dark black object, we wouldn't know what that black object is absent some proof that it in fact can fire a firearm, can fire a firearm. Well, but there was circumstantial evidence here, was there not? There was a video from the ring doorbell that showed something on the sidewalk that some object was pointed at the sidewalk. There was a puff of smoke at the very end. I mean, couldn't have been inferred certainly that it was a firearm? From the discharge. I think that is exactly where the same act comes into play in this case. Okay, go ahead. And I think that gets right into what both Quigley and Hunter, what the Illinois Supreme Court said in both Quigley and Hunter, which is in the compulsory joinder statute act cannot be read as cannot be read or interpreted to have a hyper technical interpretation to create multiple acts based on discrete moments in time. And that's what the state's asking to do here. And we're asking for a direct application of Quigley and Hunter and to look at what was charged in this case, a discharge of a weapon. And that formed the foundation for both the aggravated battery with a firearm charge and unlawful possession of a firearm charge. And in addition to Quigley and Hunter, the second district's recent case in Luciano comes to a similar conclusion when it assesses prior charges of possession and solicitation, and then later charges of murder. All of those were based on the same act because it was the defendant there giving instructions and passing out firearms that formed the foundation for both the possession and solicitation of aggravated battery with the firearm charges and then the subsequent murder charges. You have a second theory, do you not as to the defendant's right to a speedy trial was violated and that has to do with the continuance from November 3rd to December 12th. Isn't that correct? That is correct, Your Honor. And if we look at what happened on November 3rd in court, did the defense counsel actually ask for a continuance? We know that the time was attributed to the defendant per the trial court. Was there a specific request or was what was said ambiguous? There was no specific request for a continuance from defense counsel. In fact, he said he was court asked for the state to give a speedy trial count how many days he was at and asked the state to select a date within that speedy trial term. And the defense counsel acquiesced, did he not, in that continuance in that new date? He stayed silent. I think that is a fair reading. Well, and staying silent would mean acquiescence. Isn't that correct? That is correct, Your Honor. But recent Illinois Supreme Court case law Hartfield, for example, does say what the trial court understood matters. And on the record on November 3rd, not after the fact on November 3rd, the trial court asked the state to give a speedy trial count and to select a date within that speedy trial term. He did not ask for a date from defense counsel. Well, defense counsel on that date was also talking about discovery and not having full discovery. So again, going back to what I think we talked about a minute ago, perhaps defense counsel's responses really were ambiguous as to whether or not he was talking about he proceeded without discovery or whether he wasn't going to object to continuance on a this continuance to the defense. Well, what the trial court did was after the fact, it didn't look at what it had said on the record on November 3rd, which is state, what is the speedy trial? I think what the trial court does is ignore what it did on November 3rd, which was asked the state for a speedy trial count and to fit this trial in within the speedy trial. He said he was missing discovery from the state and it was the state on the record that later produced more discovery, not defense. And so our contention is when the trial court went back in hindsight and changed his mind about what he had done on November 3rd, that was an abuse of his discretion because on November 3rd, he was recognizing the speedy trial clock. But regardless, it was defense counsel's position. He was moving for a speedy trial all along the way. When they get to December 12th, a brand new charge pops up. He demands a trial. He objects to bifurcating the charges, which shows both the court and the state understood these were within the compulsory joiner statute, as even the state charged this as count two under the same case number. And then defense counsel files a motion to dismiss for violation of the speedy trial term, but does not include the compulsory joiner statute. And that was ineffective and violated Mr. Boyce's rights to receive effective assistance of counsel and his right to a speedy trial and all charges to be tried at the same time. Because what happened is he's preparing for trial for aggravated battery with a firearm. He's preparing for a theory of self-defense and on the eve of trial, a brand new charge, unlawful possession of a weapon by a felon, which as alleged by the state, he had a prior conviction for unlawful firearm ammunition by a felon, which is the same statute. So it starts with class two offense. It's subject to a presumptive minimum of seven years under the old firearm enhancements. So seven to 14 years sentencing range, something he has not been preparing for at all. And he's faced with this options choice that Quigley and Hunter warn against of, do I continue to demand my right to a speedy trial, or do I seek to sever the charges? And he continues to demand, but is not given, is not given the benefit of the compulsory joinder case law, which requires dismissal of this charge, which was belated and he received at the last minute. I think the other thing I did want to mention on the compulsory joinder statute, in addition to this following from Quigley, Luciano, Hunter, it also is in line with the comments talked specifically about the illegal sale and illegal possession of an item, whereas arising from the same act. And I think that flies in the face of the state's argument, that possession of some illegal item would continue all along the way. Whereas under the committee comments, the sale is the act that makes the possession known. And then someone can be charged with both possession of a legal object and sale of the same. And that subject to compulsory joinder. So to here, should the charge of aggravated battery with a firearm and unlawful possession of that firearm as a thought. Any other? Yes, I had another question, but not with respect to compulsory joinder. And it's with respect to people versus Taylor, the silent witness rule, specifically here at trial, defense counsel really highlighted that the victim could have deleted portions of the video evidence from her ring camera before giving it to the police. In your view, wouldn't deleting portions of the video constitute either tampering or fabrication? And then shouldn't it have been excluded? Yes, Your Honor. Reliable? Yes, I think that is at the heart of our contention in the third argument. Defense counsel did an excellent job of bringing out all of the problems with this video. The state's witness for the video did not know how it was created, when it was created, who created it, what happened between its purported creation and 2pm. And there was a large gap in the middle of these two clips. And we don't know why there is one. We also know today that videos can be doctored and tampered with. I mean, look at myself and counsel for the state, we are not actually sitting in the courtroom, but it looks as though we are. And we don't know what happened to this video. And under Taylor, it says at the at the very bottom, the state must put or the proponent of the video must put forth evidence that it was accurate that the process that produced the recording was accurate and reliable. And here we know nothing about that process other than a piece of this video is missing and a human manipulated that. We certainly don't need an expert to testify as to exactly how it was created, or the mechanics or technology of it. Isn't that correct? That's not what Taylor requires. No, not at all. Just someone who knows, I installed this video, it was working properly on this state. Well, it doesn't necessarily have to be I installed this video, does it? I mean, I think there are other cases that seem to indicate that as long as it's operational, and produces some pictures, then then the focus changes to reliability and trustworthiness, whether a portion is deleted or not. And that's what the thrust of my first question was. Yes, your your honor, that is absolutely right. There is a multitude of factors. And in each case, they are weighed based on the specific evidence put before the court. Council, not not all that long ago, the idea that somebody would have a security camera at their door was probably pretty esoteric is probably pretty unusual. We might be really looking for some help in understanding it. But are these now so ubiquitous that there is a high degree of common knowledge as to how they work? Is the threshold lower for what we need somebody to explain to make it admissible? I certainly Taylor was decided 12 years ago. And certainly, technology has significantly advanced since then. I think what happens along with this, this technology becoming in better and better use is that we also are better and better at editing it and changing it. And I think, really, we need someone to say, this video that came in is reliable. I put it here, or I know it was working. And I downloaded it. And no one, no one changed it from the time it recorded to the time it came into this courtroom. And there's this. That's the purpose of foundation is to show the accuracy and the reliability of process that produced what you're watching here in court today. And we had nothing to do that in this case. And I think Taylor anticipates a limit. And this case, I think really goes beyond that limit. Did I answer your question? You did? Is it reasonable to say that there are other reasons that there might be a gap in a video if it's motion activated, that it kind of starts and stops it according to some motion detection setting and so forth? Where does that where does that fit in our in our consideration? There certainly are motion. I mean, Taylor itself was a motion detected video. That's what was testified to by the detective that hadn't that had installed the video and watched it and confirmed its accuracy. But there was no testimony here as to why it started and stopped. And there wasn't that testimony that people were still moving when it stopped. And we know somehow this woman has to get back inside. And yet we never see that on the video. We just see a three minute gap. Is my time up? You'll see a yellow box that says you have two minutes remaining when that comes. Thank you, Your Honor. I'm sorry for that. Are there further questions on argument three? No. Okay. Thank you. I welcome any before I conclude, I do welcome any additional questions on any of the four issues raised in the purse. I don't see any additional questions. Okay, thank you, Your Honors. In conclusion, Mr. Boyce is still in custody today and had been in custody, has been in custody since he was arrested on August 23, 2022. He immediately demanded a speedy trial, expected a speedy trial and was prepared to assert self-defense to an aggravated battery with a firearm charge. At the very last minute, he was on the eve of his second scheduled trial date. He was charged with unlawful possession of a weapon by a felon based on the same act alleged in count one, the discharge of that firearm. His charge should have been dismissed under the compulsory joinder and speedy trials statutes. And for the reasons laid out in arguments one and two of our brief, we respectfully request that his conviction for unlawful possession of a weapon by a felon be reversed. In the alternative, we ask that his conviction be reversed and the case remanded for a new trial because as we just discussed, the video upon which he was convicted never had an appropriate foundation laid and there was evidence that it had been manipulated. In addition, as discussed in argument four in the briefs, trial counsel implicitly admitted to the offense of unlawful possession of a weapon by a felon when he asserted self-defense in voir dire and he was ineffective when he failed to ask to strike that panel when the state dismissed that charge before beginning trial. Thank you. Okay, thank you, Miss Winterhalter. You will have time in rebuttal argument. Mr. Londrigan, you may proceed with your argument. Good morning, your honors. May it please the court, counsel. Listening to the arguments of defendant, I'm not sure where the court's concerns lie. I don't want to waste the court's time, but picking up on Justice Zinoff's question as to issue number one, is it possible for the defendant to be in possession of a weapon and still legally fire a weapon? Good question, Justice, but I don't know the exact answer to that because there may be some extenuating circumstances out there, but I think I understand where the court is coming from with that question. The state, though, would argue we're still dealing with two distinct acts. The point that I was attempting to make in my brief was that the act of possessing the weapon took place as soon as he came within possession of the weapon, not when he fired it. We don't know, but we don't know. There's no evidence of what happened before we saw him fire it, right? So that's why there's one act and not two. Isn't that correct? We don't have any evidence of what happened before. Well, Judge, I draw a distinction between what the video does relay. It shows a time period of what, two or three or four minutes? The first thing we see is the defendant pulling up his vehicle within range of the ring camera. When he exits the vehicle, if you look closely at that he has the weapon in his right hand. Well, I would, having viewed the video, I guess take a different view. It's some object, but I'm not sure one can discern what it is until he actually, at the very end of the time the video stops, points it towards the ground and we see the puff of smoke. Okay. You're saying you think it's visible from the beginning? He obviously has an object in his right hand. He puts that object under his left armpit and then over arm, excuse me. And then he, you know, fights with the victim with his right hand. So it's not clear that the item is a weapon until he fires it. Nevertheless, because the item was visible, perhaps not identifiable, but nevertheless visible as soon as he gets out of the car. We know he's in possession of it before he fires it. So firing just identifies what the object is. It doesn't suggest that he first came into possession of the item at the exact time that he discharges it. So that's the distinction that the state is trying to make. He obviously has the item as soon as he exits his vehicle and approaches the victim's residence. He maintains possession of it throughout his fighting or altercation with the victim. The item is then identifiable when he fires it. It's then, you know, we know that that item with a reasonable degree of certainty is a weapon. And there, you know, it's two distinct acts. Yeah. Four minutes or so of that video. Is that what you're saying? So because there's some unidentifiable item that we first observe in the video that two minutes later or three, whatever it is, three or four minutes later appears maybe to be this gun because it's got the puff of smoke. Those are the two different acts within this span of a couple of minutes. Is that what your point is? I want to be sure I understand it. Yes, I think that's part and a part of it. I think that's part of the issue. I think that's part of the issue. Firing a weapon in the direction of another individual constitutes aggravated battery. That's the separate offense. The first offense is being in possession. I suppose it could happen simultaneously. If someone threw you a weapon, you caught it and fired it immediately at someone, but that was not the facts portrayed in this video. Mr. Lonergan, is that what the state argued at trial? No, I think it just argued that he was in possession of a weapon, judge, and that the weapon was identifiable in the video. A quote from the prosecutor during closing argument is, you see it on the video. He turns around. He points the gun to the ground. He fires it. He's a felon. He's guilty. Thank you. It sounds to me like he's arguing the same act. The turning and firing is the evidence that supports the unlawful possession charge. If that's the case, is that a problem? Well, first, let me say that I don't think that's... I understand that's the court's decision. You can accept that if that's the court's prerogative. I don't think that's necessarily the intent of the prosecutor. I think what he's saying there is what I just tried to explain, is that we know it's a gun when it's fired. There may be some question as to what that object is, but clearly he has an object in his hand when he exits the vehicle. Clearly, he had the gun before firing it. So, that's what makes it a separate act. Now, is there a problem if he's in possession of it and firing it? The problem or potential problem that I'm trying to point out here is, if the prosecutor did not attempt to argue that these were two separate acts, but instead argued to the jury that this was one act and that the firing of the gun in the video that establishes defendant fired a gun was the evidence upon which it should rely in convicting him of the unlawful possession charge, wouldn't that be a problem? I don't think so, Judge, because the case law that I reviewed dealing with one act, one crime, when you have multiple possession or possession of multiple items, I think the court has found that you have a necessity to charge all of those at the same time. But when you have different acts, the Compulse Rejoinder, it says, not intended to cover situations in which you have several offenses, either repeated violations of the same statutory provision or violations of different but closely related provisions. So, I think you can still have possession being a different statutory violation, possession of a weapon, as opposed to firing it in the direction of someone else. So, I still think that it's not one act as that is defined. I think it's Peeble versus Griffin. But again, I don't think that's what the prosecutor was attempting to argue. I think what he was saying is we know it's a weapon at the time that it's fired. Any question as to what that object was in his possession previously has been clarified once the weapon's fired. So, the argument is not to the jury that these are simultaneous acts. The argument is we know now he has a weapon. He's a felon. Therefore, he's in possession of a weapon by a felon. Thank you. Would you agree, however, that one act could violate two different statutes? Yes. But you don't believe, obviously, that that's the situation we have here? No, because I think when you're dealing with possession of a weapon, he did not come into possession of the weapon in the same act that he fired the weapon. Those are two different acts. He must have had the weapon before firing it. He had the weapon when he left the vehicle. And the evidence of that is what? The evidence of that is... Reduced in trial. At trial. I'm sorry. Go ahead. Yeah. The video shows him removing something underneath his left arm and firing it into the ground. There's no one that approaches him and hands him a gun. He doesn't reach for the gun on the ground or in a bush or some other object. It's fair to assume then that he had the gun under his left arm before retrieving it there. He must have had the gun prior to firing it then. And it's a fair assumption that the object that he had in his right hand when he exited the vehicle and the object that he placed under his left arm when approaching the victim's home was, in fact, a gun that he retrieved and fired into the ground. Mr. Londrigan, I want to give you the hypothetical. Obviously not the case here. But if instead the ring video showed a defendant reach into the car, pull out a gun, raise it and shoot, would that show two different acts? Two chargeable acts? One being the possession, according to your argument, he would be possessing it and then firing it. Well, I think we need to get back to the purpose of this rule in the first instance. I mean, it was created, the compulsory joinder rule was created in order to stop prosecutorial abuse or the prosecutor piecemeals offenses that were more properly brought all together at one time. In this instance, you know, I can't explain why the prosecutor, you know, elected not to do so. You know, from the record, it appears as though the grand jury returned a second indictment months later. I don't know if the defendant's status as a felon was why that transpired. But I don't see the purpose for the rule being met or addressed in this particular instance. I don't see evidence of prosecutorial abuse in this case. I understand the court's concern for the one act principle in trying to, you know, devise a plan. I don't know how to answer your question directly, Judge, except to say that I would be inclined to charge both of those offenses at the same time if I was the prosecutor. If he reached into a car, grabbed a gun and fired it, I knew that he was a felon. I would charge him with both offenses. Whether or not the one act, one rule requires that, I'll leave to the court's discretion. Okay. So this morning, you seem to be changing your argument a bit at your brief in your brief at page 21. You say the act of illegal possession of a weapon occurred as soon as defendant possessed the weapon at a time and place before he encountered the victim of his battery and is totally unrelated to her. That's something different than you're arguing this morning. How do you account, why is the argument today different? Well, I'm sorry, Judge, if I misstated my argument, but I don't believe that it is different from what I'm making this morning. When I said at a time difference, several minutes before encountering the victim, he's getting out of his car with what I believe to be the gun in his hand. She doesn't have anything to do with his possession of the gun at that time. Um, he's not, uh, she's not involved until he actually fires the gun. And it was my point that he's clearly in possession of it when he's driving up, uh, his car to her home. So he clearly had possession of the weapon for some period of time prior to discharging it in her direction. I don't know how long, at least from the moment he exited the possession of it while he's driving the vehicle. So I see that possession of the weapon is removed at a time place in person, uh, from the events of firing the weapon in the direction of the victim. Thank you for your clarification. Thank you, Judge. I don't know if there's any other issues, you know, that are of concern to the court. Um, you know, I'm happy to address any questions or any problems. I think Judge Doherty's comment with regard to the ring doorbell is, uh, well-placed. And I think these things are very common now. Uh, this type of evidence comes in, uh, to trials on a regular basis. It is a problem though, isn't it? That if it, if it is motion activated, there was obviously motion that was not being recorded. Well, I don't... Does that actually work as an inference that there was tampering? I don't think there is an inference that there's tampering, Judge. You know, tampering in my mind suggests that the person in possession of the video is capable of altering it or changing what it portrays in some fashion. I don't believe that this, uh, victim had the ability, capacity, time, or intellect to accomplish that. You know, she showed this video to the investigating officer shortly after the investigating officer, uh, appeared the same day that the incident was reported. It's time stamped on the date and time on when it's taken. Um, I have one of these things and, uh, I'm somewhat familiar with how they operate and they are motion activated. As to why they shut off at any particular time, I think if you get, if the motion gets far enough away from the camera, it shuts itself off. I don't want to be giving testimony. I know that's inappropriate. Um, but how this thing actually works, I don't, you know, it gets into extreme detail. And I agree, we don't need an expert to be called in from the ring camera manufacturing facility to testify in each instance in which this type of video is played. Um, you know, we can speculate as to why it turned off or turned on. Um, but the point is it accurately portrays the victim. It portrays the defendant. Both of them were identified. It gives the date and time. It corresponds with the 911 call. It corresponds with the police or with the bullet casings found. Who established that the date and time is accurate? Well, I'm not sure. I'm just saying that the video that we watched was date and time stamped. Uh, it was the proper time, uh, for that video to have existed. It was the proper date for that video to have existed. I don't know how the date and time stamp is on that video. Uh, I don't know that that can be manipulated. I don't believe that it can. You know, it's, uh, I think this is all done, uh, remotely on the cloud. I think this video, you can retrieve it for up to, you know, days or weeks or months, uh, and you download it onto your phone. And once it's onto your phone, uh, you can download it to some other device if you so choose. Uh, but I don't believe there's any evidence of tampering, um, or substitution or contamination. Uh, a question from defense counsel as to whether or not, you know, it could have been of anything. It's just a question. And, um, there is no evidence of tampering or substitution or contamination. And these types of... Would you agree deletion would constitute tampering if it was intentionally done? Yes, I would say that that is tampering. If you're deleting something, you're giving less than a full story. So yes, that would be tampering. Um, but again, I don't think that can be done. Um, but you know, I'm no expert in it either. Just a common user, I suppose, similar to the victim. Um, so that's where we stand on that issue as well. If there's no other questions from the bench concerning any other issue. I don't see any. All right. Thank you, Your Honors. Okay. Thank you, Mr. Londrigan. Ms. Winterhalter, uh, rebuttal argument? Uh, you're muted. Still muted. Okay. Sorry about that. I would like to address both of the topics that were just discussed briefly. First, as counsel said, the purpose of the compulsory statute is to prevent piecemeal litigation, just like what happened here. On August 24th, Mr. Boyce came into court, had a bond hearing, and was charged with aggravated battery by discharge of a weapon. At that very bond hearing, the state represented that he had a prior conviction for unlawful possession of firearm ammunition and sought an increased bond based on that. They knew of the potential background felony to charge him with unlawful possession of a weapon by a felon, but they didn't. They waited until the second scheduled trial date of December 12th to appear with a brand new charge based on the very same act as the first charge. It discharged that weapon. Is, are we looking at whether the act was the same, whether the knowledge was sufficient, or both? We're looking at whether, well, you do need compulsory jointer purposes, you do need sufficient knowledge of the charge at the time, but the state did not contest that in its brief, and we know from the record of the trial of the bond hearing that it knew the prior felony. What, what do you think about counsel's distinction between using the first image of the defendant carrying something as being a separate act and using the later image to constitute identification of what he was carrying in that act? In other words, if we, if we look at the beginning of the video, he's not shooting the weapon, he's not aiming the weapon, he's carrying, you should say he's carrying something, and by looking later, there's a basis to conclude what that something was. I think that requires the, honestly, the hyper-technical parsing of time that Quigley and Hunter won against, and I think Quigley and Hunter address this really well. Quigley is a misdemeanor DUI and an aggravated DUI, and the court mentions that the misdemeanor DUI continues ongoing when someone gets in the car and starts driving, and then until they crash, and that crash was the basis for the aggravated DUI, but those two charges were subject to compulsory jointer because they were based on the same act. One was a continuing act, and possession is a continuing offense. We know that, but here, the charge is based on the moment it's discharged, based on the moment it becomes identifiable, and we cannot use hyper-technical moments in time here, a 20-second video, to parse when something began and ends, begins and ends, because possession continues. Also, Hunter is a good example. The defendant there is charged with possession of drugs, and then later charged with possession of guns. They were found in the same search at the same time, based on his going in and out of that vestibule and transacting with someone. Okay, if we had evidence that he was seen entering the car at his house with the weapon, and then shortly thereafter, everything played out the way we know it, that would not be the same act, right? It depends on how it's charged. Right here, he's charged with possessing a weapon at the same exact moment he's charged with discharging it. He's not charged with possessing a weapon at his house, wherever that may be, so I think that's a different situation, and in addition, so for that reason, here, Mr. Boyce was charged 105 days later, based on the same exact act of discharging this firearm upon lawful possession of that firearm, and he did not receive an immediate and speedy trial. For that reason, the second and subsequent charge should have been dismissed on speedy trial on compulsory joint or purposes. In addition, when he did go to trial, the sole of the state's case was this video for which it laid no foundation, and I know we've talked a lot about how these videos are made, and maybe they're put on the cloud, they're retrievable at any point in time, but we have no evidence of how these two clips came to be. All we know is a detective showed up seven hours later and was emailed a video by this complaining witness. We know nothing about this woman. We don't know about her education, her technical savviness, her online presence, what she's capable of doing, what she's capable of asking for help with. All we know is there's a chunk of video missing when people were still moving, and as everyone accurately pointed out, we do not know that the date and time were accurate. Thank you, Your Honors. Okay, thank you, Ms. Winterhalter. Thank you both. The case will be taken under advisement, and we'll issue a written decision.